### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-------------------------------x
CREDIT-BASED ASSET SERVICING   :
AND SECURITIZATION, LLC,       :
                               :
     Plaintiff,                :
                               :
v.                             :   Civil No. 3:08CV00808(AWT)
                               :
WILLIAM LICHTENFELS;           :
KIMBERLY LICHTENFELS;          :
UNITED STATES OF AMERICA,      :
INTERNAL REVENUE SERVICE; and  :
STATE OF CONNECTICUT,          :
DEPARTMENT OF REVENUE SERVICES,:
                               :
     Defendants.               :
-------------------------------x
```

### <u>RULING ON MOTION TO DISMISS</u>

The plaintiff, Credit-Based Asset Servicing and
Securitization, LLC ("C-BASS"), brings this action against
William Lichtenfels and Kimberly Lichtenfels (the "Lichtenfels"),
seeking, <u>inter alia</u>, foreclosure of the mortgage on and
possession of certain real property of the Lichtenfels (the
"Property").  The Lichtenfels have moved to dismiss this action
pursuant to the <u>Colorado River</u> abstention doctrine.  For the
reasons set forth below, the motion to dismiss is being granted.

## I. <u>FACTUAL BACKGROUND</u>

In January 1999, the Lichtenfels borrowed $160,000.00 from
Merrill Lynch Credit Corporation ("Merrill Lynch") and executed a
promissory note, in the same principal amount, in connection with
the loan (the "Note").  On the same day, they executed and delivered

to Merrill Lynch a mortgage on the Property to secure the Note (the "Mortgage").  The Note and the Mortgage were assigned to Bankers Trust Company of California, NA, as Trustee for the Holders of PNC Mortgage Securities Corp. Mortgage Pass-Through Certificates, Series 1999-7 c/o Cendant Mortgage Corporation ("Cendant").

In late December 2003, the Lichtenfels received notice from Cendant that the interest rate on the mortgage loan would be adjusted from 6 and 7/8% to 3.25%.  The change reduced their monthly payments from $911.99 to $775.72.

In March 2004, the Note and the Mortgage were sold to Deutsche Bank National Trust Company ("Deutsche Bank"), as trustee, and the loan was serviced by Litton Loan Servicing, L.P. ("Litton"), a wholly-owned subsidiary of C-BASS.  The Lichtenfels contend that, as of March 15, 2004, they had not received any correspondence from Litton directing them where to send the payments.  Then, on March 18, they received an invoice for a payment in the amount of $1,664.53, more than twice the amount Cendant had quoted to them less than four months earlier.  After telephone conversations with Litton representatives, William Lichtenfels said that he would pay only the original invoiced amount.  He was told, however, that any amount less than $1,664.53 would be considered a partial payment, and they would be considered in default.  On April 6, 2004, Litton declared the Lichtenfels to be in default.  Eventually after telephone conversations and written correspondence, Deutsche Bank

-2-

instituted a foreclosure action on June 22, 2004.  Soon after,
Litton sent another letter stating that the monthly payment was
$775.72, i.e, the original reduced amount.  The Lichtenfels received
a reinstatement letter from Hunt, Leibert & Jacobson, P.C. ("HL&J"),
counsel for C-BASS, signed by Patrick Crook ("Crook"), and the June
22, 2004 foreclosure action was withdrawn.  Then, a dispute arose
concerning the payment schedule.  The Lichtenfels believed that they
could continue making retrospective payments on the mortgage loan,
which had been their practice.  As a result of this dispute, and
other disputes about the balance to be paid, the Lichtenfels
received another letter in August stating that they were in default.

On October 26, 2004, by complaint returnable to the Superior
Court for the Judicial District of New Haven, Deutsche Bank
commenced a foreclosure against the Lichtenfels entitled <u>Deutsche
Bank National Trust Company, Trustee v. Lichtenfels et al.</u>, NNH-CV-
04-4003402-S (the "First State Action").  In addition to the
Lichtenfels, the defendants were the U.S. Internal Revenue Service
and the Connecticut Department of Revenue Services.  HL&J
represented Deutsche Bank, and Crook handled the case.  On June 5,
2005, the Lichtenfels filed an Answer and Counterclaims in the First
State Action setting forth counterclaims against Deutsche Bank for
breach of contract, violation of the Connecticut Unfair Trade
Practices Act, violation of the Fair Credit Reporting Act, wrongful
foreclosure, intentional infliction of emotional distress, breach of

the implied covenant of good faith and fair dealing, and breach of fiduciary duty in the October 2004 foreclosure proceeding.  The Lichtenfels contended that the debt was calculated erroneously and that Deutsche Bank did not have a proper basis for putting them in default.  Among their requests for relief in the First State Action was a request for "[a] declaration that the Defendants/Counterplaintiffs were not in default under the Note and Mortgage."  (Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp.")(Doc. No. 30) Ex. A, at 14.)

On November 22, 2005, a nonsuit was entered by the Superior Court against Deutsche Bank on its foreclosure action.  The Lichtenfels had moved the court to nonsuit Deutsche Bank because of its failure to comply with its discovery obligations.  (Pl.'s Opp., Ex. C.)  The Lichtenfels' counterclaims remained.

On November 21, 2006, the Lichtenfels commenced a state court action entitled Lichtenfels et al. v. Crook et al., NNH-CV-06-5007438-S (the "Second State Action") against Litton, Deutsche Bank, HL&J, and Crook.  In that action, the Lichtenfels contest the debt calculation and the default.  They brought claims for intentional and negligent infliction of emotional distress, libel and slander, slander of title, violation of the Fair Debt Collection Practices Act, and violation of the Connecticut Unfair Trade Practices Act. They sought money damages as well as the release of a lis pendens.

-4-

On July 13, 2007, counsel for Deutsche Bank and Litton filed motions to consolidate the First and Second State Actions.  The motion to consolidate was granted on October 23, 2007.

On November 27, 2007, C-BASS recorded in the land records an assignment by Deutsche Bank to C-BASS, dated July 15, 2004, of the Note and the Mortgage.  On December 3, 2007, C-BASS moved to substitute itself for Deutsche Bank in the First State Action.  The motion was denied from the bench, but on advice of the court, the Lichtenfels filed a motion to cite-in C-BASS which was granted from the bench over objection on July 22, 2008.

According to the Lichtenfels, "[t]he parties have attempted mediation and have agreed on order of the Superior Court to attempt mediation again, and a single judge, the Honorable Thomas Corradino, has been assigned to oversee the consolidated cases until trial." (Memorandum in Support of Motion to Dismiss Complaint ("Def.'s Br.")(Doc. No. 26) at 6-7.)  C-BASS concedes that "[t]he two state actions have been the subject of extensive motion and discovery practice . . ."  (Pl.'s Opp. at 7.)  The Lichtenfels also state that there have already been five trial dates, four of which were continued by the instant plaintiffs and/or Litton, Crook and HL&J.

In the instant action, C-BASS alleges that the Note and the Mortgage are in default for non-payment and C-BASS has elected to accelerate the balance due under the Note.  The U.S. Internal Revenue Service and the Connecticut Department of Revenue Services

have each filed liens against the Property, and the complaint names
them as defendants.

II. <u>DISCUSSION</u>

"Abstention from the exercise of federal jurisdiction is the
exception, not the rule."  <u>Colorado River Water Conservation</u>
<u>District v. United States</u>, 424 U.S. 800, 813 (1976).  Under the
<u>Colorado River</u> doctrine, a federal court may, in "exceptional
circumstances", abstain from exercising jurisdiction when there
are concurrent state and federal proceedings.  <u>Id.</u>  A court is
required to examine six factors in determining whether <u>Colorado</u>
<u>River</u> abstention is warranted: "(1) assumption of jurisdiction
over a <u>res</u>; (2) inconvenience of the forum; (3) avoidance of
piecemeal litigation; (4) order in which the actions were filed;
(5) the law that provides the rule of decision; and (6)
protection of the federal plaintiff's rights."  <u>De Cisneros v.</u>
<u>Younger</u>, 871 F.2d 305, 307 (2d Cir. 1989).

The Lichtenfels argue that the court should dismiss this
federal action under the <u>Colorado River</u> doctrine.  C-BASS
contends that the consolidated state action and the instant
action are not concurrent.  C-BASS also contends that, even if
the actions are concurrent, the factors a district court is
required to examine weigh in favor of exercising jurisdiction.

**A. Concurrent Proceedings**

"The principles of <u>Colorado River</u> are to be applied only in

-6-

situations involving the contemporaneous exercise of concurrent jurisdictions. . . .  Therefore, a finding that the concurrent proceedings are parallel is a necessary prerequisite to abstention under Colorado River." Dittmer v. County of Suffolk, 146 F.3d 113, 117-18 (2d Cir. 1998)(internal citations and quotation marks omitted).  "In determining whether the actions are concurrent, a court may consider whether both actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested." Housing Works, Inc. v. City of New York, 72 F.Supp.2d 402, 417 (S.D.N.Y. 1999), citing Sheerbonnet, Ltd. v. American Express Bank Ltd., 17 F.3d 46, 49-50 (2d Cir. 1994).

C-BASS contends that the parties are not the same.  The First State Action was commenced by Deutsche Bank, not C-BASS. The Second State Action, commenced by the Lichtenfels, named as defendants parties not named in the instant federal action, i.e., Deutsche Bank, Litton, HL&J, and Crook.  C-BASS argues that, consequently, the parties are not the same.  See Alliance of American Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988)("Similarity of parties is not the same as identity of parties.").

C-BASS cites Sheerbonnet in support of its position. There, the Second Circuit reversed the dismissal of a plaintiff's claim, finding, inter alia, that the two proceedings involved different parties.  In the state case, the plaintiff Superintendent of

Banks of the State of New York initiated a liquidation proceeding that involved the assets of the Bank of Credit and Commerce International ("BCCI").  The Superintendent petitioned for an order compelling several financial institutions, including American Express, to turn over funds in their possession. American Express would not turn over to the Superintendent any of the funds held by it because it claimed a right to the funds as a setoff against debts that BCCI owed to it.  In a later filed federal case, Sheerbonnet, a Swiss Bank, sued American Express, bringing claims for conversion, tortious interference with contractual relations, and unjust enrichment.  It claimed that American Express had accepted certain funds from a bank and credited them to BCCI when American Express knew that BCCI's assets had been frozen.  The Second Circuit noted that Sheerbonnet was not a participant in the state liquidation proceedings, the liquidation creditors were not participants in the federal action, and the Superintendent "expressed no interest in the pendency of this [federal] suit."  Sheerbonnet, 17 F.3d at 50.

The situation here is different in material respects.  C-BASS has argued that it "is not now nor has it ever been a party to the Second State Action."  (Pl.'s Opp. at 6) However, C-BASS is not merely a similar party.  Rather, it has an identity of interest with Deutsche Bank.  As the assignee of the Note and the

-8-

Mortgage, it is Deutsche Bank's successor in interest, and it appears that it was prior to the date the First State Action was commenced.  As to the First State Action, C-BASS moved unsuccessfully to substitute itself for Deutsche Bank but was subsequently cited in, and it appears it was the real party in interest all along.  As to the Second State Action, while C-BASS is not a party, the Lichtenfels included a claim for relief in the form of release of the lis pendens on the Property, which would have affected C-BASS as Deutsche Bank's successor in interest.[1]  In any event, the First and Second State Actions were consolidated prior to the filing of this federal action and also prior to the release of the lis pendens by Deutsche Bank.  "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum."  Dittmer v. County of Suffolk,  146 F.3d 113, 118 (2d Cir. 1998), quoting Day v. Union Mines Inc., 862 F.2d 652, 655 (7th Cir. 1988)(internal quotation marks omitted).

With respect to Litton, HL&J, and Crook, none of them (and no predecessor in interest) was named in the First State Action. They were only brought into the state court litigation when the

---

[1]On January 31, 2008, Deutsche Bank released the lis pendens filed by it in the First State Action.  (See Doc. No. 30, Ex. I.) No reason has been given, but had the lis pendens remained on the Property four months later when the instant federal case was filed, the argument that the state court exercised in rem or quasi in rem jurisdiction would be even stronger.

Lichtenfels brought the Second State Action.  In the instant action, the Lichtenfels have yet to file an answer, but if they are required to do so they will be able to include as counterclaims all the claims made by them in the consolidated state action, and it appears that they will.  Thus, the parties in this federal action are identical parties or their successors in interest who were in the consolidated state action at the time when only C-BASS's predecessor in interest had brought a claim, and if the Lichtenfels are required to plead, the parties in the instant action will be the identical parties or their successors in interest who were in the consolidated state action after the Lichtenfels bought their claims there.

The analysis is substantially the same with respect to the issues of the same subject matter and same relief requested.  One additional point made by C-BASS is that the default on which the First State Action was premised was a default that occurred before that case was filed, whereas the default alleged in this federal action is one which began at the time the First State Action was commenced and continues to the present.  The court agrees, however, with the Lichtenfels that it is "the legitimacy of the self-same debt and default alleged" with respect to the same Note and the same Mortgage that is at issue in the instant case and the consolidated state action.  (Def.'s Br. at 1.)

Although C-BASS attempts to litigate in this court only the portion of the consolidated state action that it was pursuing (and still can pursue) in state court, it is apparent that if the Lichtenfels are required to file a pleading in this case (which they will be if the motion to dismiss is denied), there will be a duplication of the proceedings of the First and Second State Actions, and the instant federal action will "essentially parallel[] the state court actions . . ." Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 359 (2d Cir. 1985). The fact that there is not a complete duplication today is a consequence of only the timing of when the Lichtenfels would file their counterclaims in the instant action.

**B. Colorado River Factors**

Under the Colorado River doctrine, the court's task "is not to find some substantial reason for the exercise of federal jurisdiction . . .; rather, the task is to ascertain whether there exist exceptional circumstances . . . to justify the surrender of [federal court] jurisdiction." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25-26 (1983)(internal quotation marks omitted). "[A] district court's discretion to abstain must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." Village of Westfield v. Welch's, 170 F.3d 116, 125 (2d Cir. 1999)(internal citations omitted). The Supreme

Court has stated that federal courts have a "virtually unflagging obligation" to exercise their jurisdiction.  Colorado River, 424 U.S. at 817.

Nevertheless, the factors that a court must examine when deciding to abstain should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand."  Moses H. Cone Memorial Hosp., 460 U.S. at 21.  "In analyzing these factors, the Supreme Court admonishes that no single factor is necessarily decisive . . . ."  De Cisneros, 871 F.2d at 307 (2d Cir. 1989).  "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."  Moses H. Cone Memorial Hosp., 460 U.S. at 16.

### 1. Assumption of Jurisdiction Over a Res

The Second Circuit has held that jurisdiction over the res can be dispositive when applying Colorado River.  See F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 101 (2d Cir. 1999); see also E. Chemerinsky Federal Jurisdiction § 14.2 (5th ed. 2007)(noting that while the traditional rule is that the existence of a case in one court doe not defeat jurisdiction in another, "[t]here is one firmly entrenched exception to this rule: in actions concerning real property, whichever court has jurisdiction first is entitled to exclusive jurisdiction over the matter and even can enjoin other courts from hearing the case.").

-12-

The Lichtenfels note that in rem jurisdiction over the Property was assumed by the state court when the First State Action was filed, long before the commencement of this federal action.  They argue that their counterclaims in the First State Action, because they included a request for relief in the form of a declaratory judgment, invoked the state court's quasi in rem jurisdiction at a time when the state court already had in rem jurisdiction as a result of Deutsche Bank's foreclosure action in the First State Action.  Thus, they argue, the Connecticut Superior Court's jurisdiction "over the thing" never lapsed, even though Deutsche Bank's foreclosure action in the First State Action was nonsuited.  (Defendants' Reply to Plaintiff's Memorandum in Opposition to Motion to Dismiss Complaint ("Def.'s Reply")(Doc. No. 31) at 6.)  C-BASS argues that the state court terminated its jurisdiction over the res when it nonsuited Deutsche Bank's state foreclosure action and that the Lichtenfels' request for a declaration that they were not in default under the Note and the Mortgage never served to invoke the Connecticut Superior Court's quasi in rem jurisdiction.  They also argue that even if it did, the dismissal of the underlying foreclosure action rendered the request for a declaratory judgment moot and thereby terminated any in rem or quasi in rem jurisdiction the state court may have had.

"[A]n action in rem is an action brought to enforce or protect a pre-existing interest in particular property; an action quasi in rem is an action brought to apply the property to satisfy a personal claim." Hodge v. Hodge, 178 Conn. 308, 313 (1979)(internal quotation, citations, and footnote omitted).

It is undisputed that the Connecticut Superior Court had in rem jurisdiction over the Property after Deutsche Bank filed the First State Action, i.e., its foreclosure action.  In the First State Action, the Lichtenfels pled a claim for relief, inter alia, in the form of "[a] declaration that the Defendants/Counterplaintiffs were not in default under the Note and Mortgage."  (Pl's Opp. 21, Ex. A at 14.)  A declaratory judgment is defined as "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement."  See Black's Law Dictionary 859 (8th ed. 2004).  Such a declaration by the state court would result in the Lichtenfels holding the Property free of claims in the consolidated state action and in this federal action that C-BASS has the right to foreclose on the Mortgage because the Lichtenfels are in default under the Note and the Mortgage.  Thus, the state court has quasi in rem jurisdiction over the Property.

"[O]nce a state court has taken jurisdiction of the res that is the subject of a state court in rem proceeding, a federal

court cannot also exercise jurisdiction of the <u>res</u>."  <u>Oneida</u>
<u>Indian Nation of New York v. Madison County</u>, 401 F.Supp.2d 219,
226 (N.D.N.Y. 2005) <u>citing</u> <u>Donovan v. City of Dallas</u> 377 U.S.
408, 412 (1964).  The principle also applies if the state court
proceeding is a <u>quasi</u> <u>in</u> <u>rem</u> proceeding:

> "[I]f the two suits are in rem or quasi in rem, requiring
> that the court or its officer have possession or control
> of the property which is the subject of the suit in order
> to proceed with the cause and to grant the relief sought,
> the jurisdiction of one court must of necessity yield to
> that of the other.  To avoid unseemly and disastrous
> conflicts in the administration of our dual judicial
> system, and to protect the judicial processes of the
> court first assuming jurisdiction, the principle,
> applicable to both federal and state courts, is
> established that the court first assuming jurisdiction
> over the property may maintain and exercise that
> jurisdiction to the exclusion of the other."

<u>Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel.</u>
<u>Schnader</u>, 294 U.S. 189, 195 (1935)(internal citations omitted).
And:

> "The possession of the <u>res</u> vests the court which has
> first acquired jurisdiction with the power to hear and
> determine all controversies relating thereto, and for
> the time being disables other courts of co-ordinate
> jurisdiction from exercising a like power. . . .  Nor
> is this rule restricted in its application to cases
> where property has been actually seized under judicial
> process before a second suit is instituted in another
> court, but it often applies as well where suits are
> brought to enforce liens against specific property, to
> marshal assets, administer trusts, or liquidate
> insolvent estates, and in suits of a similar nature
> where, in the progress of the litigation, the court may
> be compelled to assume the possession and control of
> the property to be affected. The rule has been declared
> to be of especial importance in its application to
> Federal and state courts."

Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co., 177 U.S.
51, 61 (1900).

C-BASS argues that the nonsuit terminated the state court's
jurisdiction over the res.  A nonsuit "forecloses the plaintiff
from further prosecution of the action. . . ." 1 Stephenson's
Connecticut Civil Procedure § 95 (3rd ed. 1997).  "An order
striking a case from the docket for failure to prosecute is a
final judgment in that case.  It is not, however, a judgment on
the merits.  It does not conclude the parties as to the cause of
action involved in the case, because it is not a final
determination of the substantive rights of the parties."
Bridgeport Hydraulic Co. v. Pearson, 139 Conn. 186, 196 (1952)
(internal citations omitted).  While it is too late for C-BASS to
file a motion to open the judgment of nonsuit and the trial court
lacks jurisdiction to reopen this judgment, see Bufferd v. Yost,
51 Conn. App. 1, 2-3 (1998)("Pursuant to General Statutes § 52-
212, a motion to set aside the judgment of nonsuit must be filed
within four months of the date judgment was rendered."), C-BASS
may still file a subsequent action in state court.  See Milgrim
v. Deluca, 195 Conn. 191, 195 (1985)("we have uniformly construed
our rules pertaining to dismissals for failure to prosecute with
reasonable diligence not to bar a subsequent action on the same
claim").  Additionally, C-BASS may appeal the nonsuit decision.
See Jaquith v. Revson, 159 Conn. 427, 430 (1970)("A nonsuit not

-16-

based on the insufficiency of the evidence is a final judgment from which an appeal lies.").[2]

More importantly, because the counterclaim for declaratory relief remains in the case, the state court still has the ability to determine the rights of the parties with respect to a specific piece of property.  If the state court declares that no default exists, this declaration will affect the rights of the parties as to the Property going forward.  It is noteworthy that on April 20, 2007, almost 18 months after the foreclosure action complaint was nonsuited, Deutsche Bank and Litton, in their motion to consolidate the First and Second State Actions, represented that both cases "involve foreclosure, contract and tort principles of law" and "arise out of the same transaction and the substantive allegations overlap," and that "the parties run the risk of inconsistent decisions if not heard before a complex litigation judge." (Def.'s Br., Ex. I.)

C-BASS argues that even if the Lichtenfels' request for declaratory relief in their counterclaims in the First State Action invoked the state court's quasi in rem jurisdiction, the request for declaratory relief was rendered moot when Deutsche

---

[2]The court notes that when the nonsuit was initially entered, the state court still had authority to grant a motion to reopen. Thus, until it was precluded by statute from reopening the judgment, the state court had jurisdiction over the res.  Thus, loss of jurisdiction over the res cannot be premised solely on the entry of the nonsuit.

Bank's foreclosure action was nonsuited. In support of this
argument, C-BASS relies on <u>Grace Cmty. Church v. Town of Bethel</u>,
30 Conn. App. 765 (1993).  In that case, a church had optioned
residential zoned property and applied to the city for a special
permit.  The zoning commission eventually denied the permit.  The
church appealed the decision to the Connecticut Superior Court
and also filed a separate action in the Connecticut Superior
Court challenging the constitutionality of the zoning regulations
and seeking injunctive and declaratory relief.  The Connecticut
Superior Court ordered the Zoning Commission to issue the special
permit and then found that the church's original requests for
injunctive and declaratory relief were moot.  The Connecticut
Appellate Court affirmed, finding that because a permit had been
issued, there was no "present need" for relief addressing the
constitutionality of the regulations as they no longer stood as
an obstacle to the plaintiff's plans to build a church.  <u>Id.</u> at
765-770.  By contrast, here a declaration that the Lichtenfels
are not in default has a direct bearing on their future rights
regarding the Property.  Thus, the declaratory judgment would
implicate an actual and present condition, and would not be a
mere hypothetical exercise.

    Thus, the court concludes that the nonsuit of the
foreclosure action in the First State Action did not terminate
the state court's jurisdiction over the <u>res</u> because of the

presence of the pending claim for declaratory relief relating to
the same <u>res</u>.  This factor alone is sufficient to be dispositive
in this case.

### 2. Inconvenience of the Federal Forum

The Lichtenfels argue that this forum would be inconvenient
for them because it would require them "to have to defend a
duplicative action in another forum."  (Def.'s Br. at 17)
However, inconvenience refers to the geographical relation of the
respective courthouses.  See <u>Arkwright-Boston Mfrs. Mut. Ins. Co.</u>
<u>v. City of New York</u>, 762 F.2d 205, 210-211 (2d Cir. 1985)(finding
no inconvenience when the state and federal courthouses were next
door to each other).  Thus, this factor weighs in favor of
exercising jurisdiction because the distance between New Haven
and Hartford does not present an inconvenience.

### 3. Avoidance of Piecemeal Litigation

In <u>Retail Marketing Network, Inc. v. Actmedia, Inc.</u>, CIV.
No. 3:96CV800 AHN, 1996 WL 684416, at *4 (D.Conn. 1996), the
court stated:

> The avoidance of piecemeal litigation is, in this case,
> as it was in <u>Cone</u> and numerous other lower court
> decisions, the most important factor in granting
> abstention.  See <u>Cone</u>, 460 U.S. at 16 ("By far the most
> important factor in our decision to approve dismissal [in
> Colorado River] was the clear federal policy . . . [of]
> avoidance of piecemeal adjudication"); <u>The Travelers</u>
> <u>Indemnity Co. v. Monsanto Co.</u>, 692 F. Supp. 90, 92 (D.
> Conn. 1988) ("By far the most significant factor - and
> ultimately the dispositive one - is the court's
> responsibility to discourage duplicative and piecemeal
> litigation"); <u>The Travelers Indemnity Co. v. Crown Cork</u>

& Seal Co., 865 F. Supp. 1083, 1090-91 (S.D.N.Y. 1994)
(same).

C-BASS contends that, "this factor can be fairly
characterized as a neutral one." (Pl.'s Opp. at 27).  It argues
that "[e]ven if this Court abstains from determining this
foreclosure action, the foreclosure will nonetheless be heard
piecemeal from the two pending state actions." (Pl.'s Opp. at
26).  C-BASS also argues that foreclosure causes of actions are
often severed from legal counterclaims and the cases bifurcated
for trial.  In support of its argument, C-BASS cites Bethlehem
Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d
Cir. 1986).  There, in determining that Colorado River abstention
was not proper, the Second Circuit noted that, under the
circumstances in that case, "allowing the federal action to
proceed does not necessarily create piecemeal litigation that
might be avoided by dismissal."  Id.

Here, allowing the instant federal action to proceed will
necessarily create duplicative and piecemeal litigation that
could be avoided by dismissal.  The question of whether the
Lichtenfels are in default under the Note and the Mortgage is
either the principal issue or a threshold issue with respect to
all the claims that are being litigated in the First and Second
State Actions, as well as with respect to the claims that will be
litigated in the instant action.  The First and Second State
Actions have been consolidated and assigned to the complex

-20-

litigation docket for the purpose, as stated by HL&J, of avoiding the risk of inconsistent decisions.  In this federal action, that risk will exist even in the absence of counterclaims by the Lichtenfels.  If they are required to plead and they file counterclaims, that risk will be greatly magnified.  Thus, this factor weighs in favor of abstention.

### 4. Order in which the Actions were Filed

As to this factor, the "[d]ecision does not rest on a race to the courthouse.  Instead, this factor is considered in a common-sense manner by examining how much progress has been made in each forum."  <u>Arkwright-Boston</u>, 762 F.2d at 211.

Here, the First State Action was commenced over three and one-half years before this federal case was filed and the Second State Action was commenced over one and one-half years before this case was filed.  The consolidated state action has been the subject of extensive motion and discovery practice, and there has already been five trial dates.  <u>See</u> <u>Telesco</u>, 765 F.2d at 363 (where case had involved five years of proceedings that included substantial discovery, hearings and interlocutory orders, court noted that "[w]ith this history, it hardly seems wise to permit [the] plaintiff to start anew in federal court"); <u>De Cisneros</u>, 871 F.2d at 308 (2d Cir. 1989)(noting that "the relative progress of the federal and state proceedings must be carefully examined"

and affirming district court's decision to abstain even though that court was "closely involved in the discovery process").

C-BASS argues that the progress made in the state cases involves the "legal" claims of the Lichtenfels. It contends that "[b]ecause no foreclosure has been pending for years, there has been no progress with respect to the foreclosure claim." (Pl.'s Opp. at 27.) However, material to resolution of the Lichtenfels' legal claims is the same issue that must be determined in any foreclosure action, i.e., whether the Lichtenfels are in default under the Note and the Mortgage. Thus, the court finds this argument unpersuasive and concludes that this factor weighs in favor of abstention.

### 5. The Law that Provides the Rule of Decision

C-BASS has filed a diversity action. The Second Circuit has noted that "[a]s all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction." Arkwright-Boston, 762 F.2d at 211. Thus, the court places no weight on this factor.

### 6. Protection of the Federal Plaintiff's Rights

C-BASS argues that the Lichtenfels have lived on the Property for four years without paying a single mortgage payment (Pl.'s Opp. 30). C-BASS states that it is worried about the Lichtenfels' claim that if they "were to prevail in the State Actions . . . [C-BASS] would not be able to foreclose." (Def.'s

Reply at 4.)  C-BASS contends that "[t]aken to its logical end, this assertion would advocate that, as along as the Lichtenfels' legal claims are pending in Connecticut state court, they can continue to reside on the Property without paying any payment obligation."  (Plaintiff's Sur-Reply Brief (Doc. No. 34) at 3.)  However, C-BASS has the ability to vindicate its right to foreclose in state court, and thus the state court proceedings adequately protect C-BASS's rights.  In its discussion on piecemeal litigation, C-BASS acknowledges that it could bring a foreclosure action in state court again.  (See Pl.'s Opp. at 27)("Even if the foreclosure action were brought as a counterclaim in the consolidated state action, it would likely be bifurcated from the pending legal actions, and it would certainly not be tried with them.")  Thus, this factor does not weigh in favor of exercising jurisdiction.

*****

The two most significant factors, i.e., which court has exercised jurisdiction over a <u>res</u> and avoidance of piecemeal litigation, weigh in favor of abstention, as does the order in which the actions were filed.  The only factor that weighs in favor of exercising jurisdiction is inconvenience of the forum.  Thus, whether the court places dispositive weight on which court has exercised jurisdiction over a <u>res</u> and/or avoidance of piecemeal litigation, or weighs all six factors, the court's

determination is in any event that this is a case in which abstention under the <u>Colorado River</u> doctrine is proper.

**III. <u>CONCLUSION</u>**

For the reasons set forth above, the Motion to Dismiss (Doc. No. 26) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Dated this 30th day of September 2009, at Hartford, Connecticut.

_____
           /s/ AWT

         Alvin W. Thompson
    United States District Judge
